## DUNCAN v. THOMPSON et al.
### No. 10704.

Court of Civil Appeals of Texas. Dallas. Jan. 11, 1930.

W. B. Harrell, of Dallas, for appellant.

Starnes, James, Clower & Gibson, of Greenville, for appellees.

JONES, C. J.

Appellees, J. T. Thompson, E. L. Fowler, B. M. Fowler, and E. B. Tunnell, filed a suit in the district court of Van Zant county against appellant, J. L. Duncan, for the purpose of canceling a contract that they had theretofore entered into with appellant, for an accounting by appellant for the time in which he had operated under the contract, and for the immediate appointment of a receiver to take charge of the contract, the properties subject thereto, and to operate under it until the trial of the case. The district court of Van Zant county was in vacation at the time the petition was presented to the judge, who ordered it filed and appointed ex parte the receiver with the powers prayed for. The receiver so appointed at once qualified and was ready to operate under the contract when appellant, having perfected his appeal, applied to this court and secured a suspension of the receivership proceedings until this appeal could be passed upon. The receiver was required to give bond in the sum of $2,500, and the order of this court suspending the receivership was conditioned that appellant file a bond in the sum of $2,500. This bond was filed and the ex parte receivership suspended in the lower court, pending this appeal.

Appellant filed no answer to the suit, nor a motion to vacate the receivership, but appealed directly from the order appointing the receiver. The contention is made that the petition, which was duly verified, is insufficient, in that it alleges no grounds that

would permit the appointment of a receiver, and especially is insufficient for the appointment of a receiver without notice. The following is deemed a sufficient statement of the facts alleged in appellee's petition for an understanding of the case presented in the trial court:

Appellees owned certain adjacent and contiguous lands in Van Zant county and, on or about the 27th day of September, 1929, entered into a written contract with appellant, in which they placed these lands in his possession for the purpose of the development of a town site thereon, to be known as the town of Van, and for the further purpose of selling and leasing lots within said town. At the time of this contract, it was believed that an oil field would be developed, embracing lands in and adjacent to said town site; the discovery well, however, had not been brought in, but shortly thereafter came in as a large producing well. It is not deemed necessary to copy the entire contract, it being of considerable length, but the effect of it is that each appellee placed certain described acreage of his land in the possession of appellant, for the primary purpose of developing a town site thereon. Appellant bound himself at once to plat the land into blocks, lots, streets, and alleys, but in doing so not to disturb the surface of the land, other than by certain markings to show locations, until it was determined whether the discovery well would be a producer. Appellees bound themselves each to sell to appellant, at $50 per acre, lands used for said town site, no land to be considered sold until appellant had disposed of a lot or lots to a purchaser, and when such purchaser paid to appellant the full price of the lot or lots, the appellee, on whose land the lot or lots sold was located, would make either to appellant or to the purchaser of said lot a deed, and appellant would pay to such appellee the price therefor at the proportionate part of $50 the land sold bore to an acre. Appellant was empowered to sell or lease the land at any price and on any terms he deemed proper, the deed to pass to the purchaser or lessee only after he had performed the conditions above stated. Appellant was empowered to employ such help as was necessary to carry out the general scheme and purpose of the contract, to incur all necessary expense in reference thereto, and charge same against the proceeds of sales or leases of lots. It was especially stated that all of the land thus placed with appellant was subject to oil and mineral leases, and that it was only the title to the surface of the land that was made the subject of the contract; that no improvements, or sales, or leases, should be made that would in any way interfere with the owners of the oil and mineral leases in their development of the lands for oil or gas. All sales and contracts entered into by appellant in the development of the contemplated town site, or in the sale of the lots, must be in the name of appellant, and appellees were not to be considered as partners in such business. After the deduction of the expenses authorized by the contract was made, appellant should receive 75 per cent. of the net proceeds of the sale or lease of lots, and the appellee, on whose land sale or lease should be made, should receive 25 per cent. of such net proceeds of the sale or lease of his land. Appellant bound himself to make to appellees a full written report of all transactions had in the development of the town site on the 1st and 15th day of each following month, or as near on such dates as was practicable. The effect of the contract is to make appellant supreme in the management of the affairs incident to such development of a town site, and in the sales and leases of the property. No time is named in which the contract is to terminate. There are other features of this contract not here mentioned for the reason they are not deemed important for a decision of this case.

The petition sets out the contract in hæc verba, and alleges that appellant went into possession of the lands, had it platted as a town site, and was selling and leasing lots, the exact nature of which transactions were unknown to appellees, and that appellant had not called upon appellees to make any deeds to any lots; that appellant had not made the semimonthly reports provided for in said contract, and had only made one report to appellee Thompson after frequent requests had been made for same and an attorney had been employed to secure such report; that this report was not made until in November; that appellant has had in his employ a large number of persons, such as civil engineers, salesmen, bookkeepers, laborers, lawyers, and others, and had paid such employees large sums of money out of the receipts that had been received from either the sale or lease of lots; that as shown by the statement to Thompson, appellant had received a total of $12,779.47, from which he had deducted an expenditure of $3,657.32; that said statement is incomplete, in that, it does not show to whom any lots were sold or leased, from whom any part of said money was received, nor to whom any of said money was paid, for which reason appellees are furnished no basis for checking up on what appellant has actually done in the premises; that appellant has spent sums of money that are not properly chargeable to the gross receipts of the business, but should be charged against the 75 per cent. of the net proceeds he was to receive; that of these items there is the sum of $1,277.97 for commissions paid to other persons, and that there is an item of equal amount for lawyers fees which are not properly chargeable against said gross receipts; that the report shows that appellant has not managed the business in an economical manner, as he agreed to in said contract, but that the large expenditure of $3,657.32, approximately one-

fourth of the gross receipts, shows that he has been extravagant and reckless in incurring expenses; that such expenditures are unreasonable and amount to a reckless waste of money.

These are the material allegations of fact upon which is rested the claim for the appointment of a receiver, to take the business out of the hands of appellant and place same in the hands of a receiver to carry out the provisions of the contract until their suit for cancellation and for an accounting shall be determined. We are of opinion that the allegations are insufficient to show the necessity of a receiver, especially in view of the fact that there are no allegations showing the insolvency of appellant, and showing that he is not able to respond in the amount of any damages that appellees may have suffered by reason of the failure of appellant to make the reports provided for in the contract, and for damages by reason of the alleged unwarranted charges of expenses against the proceeds. Appellees still hold the legal title to all of their lands, and are not required to make a deed to any land sold by appellant until he has performed the conditions named in the contract for the execution of such deed.

Article 2293 (Rev. St.) names the grounds on which a trial court may appoint a receiver. There are four subdivisions of this statute, but 1 and 4 are the only subdivisions that can be appealed to for the appointment of a receiver in the instant case. Subdivision 1 provides that a receiver may be appointed by a judge of a court of competent jurisdiction in this state: "In an action by a vendor to vacate a fraudulent purchase of property; or by a creditor to subject any property or fund to his claim; or between partners or others jointly owning or interested in any property or fund, on the application of the plaintiff or any party whose right to or interest in the property or fund or the proceeds thereof is probable, and where it is shown that the property or fund is in danger of being lost, removed or materially injured." There is no showing here that the property in suit is in danger of being lost, removed, or materially injured, and hence no appeal to such subdivision can be made to justify the appointment of a receiver. Phœnix Oil Co. v. McLarren (Tex. Civ. App.) 244 S. W. 830; Rio Grande Products Corporation v. Yarbrough (Tex. Civ. App.) 3 S.W.(2d) 145; Hare & Chase, Inc., et al. v. Dunton (Tex. Civ. App.) 6 S.W.(2d) 139; Haywood v. Scarborough, 41 Tex. Civ. App. 443, 92 S. W. 815; Security Land Co. v. Development Co. et al. (Tex. Civ. App.) 142 S. W. 1191; Simpson v. Alexander (Tex. Civ. App.) 188 S. W. 285.

Subdivision 4 provides that, "In all other cases where receivers have heretofore been appointed by the usages of the court of equity." Courts of equity uniformly declare that the power to appoint a receiver will not be exercised in a doubtful case; and the remedy, being a drastic one, is only allowed in a case of an urgent necessity, and where there is no other adequate remedy, can a receiver be appointed to take control of property out of the hands of one in whom it has been legally placed. These courts hold that mere dissatisfaction with the management, or mismanagement, which is not of a gross character and does not amount to fraud, will not warrant the exercise of the power. See authorities above cited, and also Henry Furrer et al. v. Nebraska Building & Investment Co. (108 Neb. 698, 189 N. W. 359) 43 A. L. R. 225, and annotations and notes at the close of the opinion, especially on page 317 under "conclusion."

The petition does not measure up to this requirement, and we are of opinion it is insufficient to warrant the appointment of a receiver pending the litigation. In this case, we are only passing upon the right of appellees to the appointment of a receiver. The primary purpose of the suit, for an accounting and for cancellation of the contract, is in no way affected by the conclusion here reached.

It follows that the order of the trial court appointing a receiver should be reversed and here rendered in favor of appellant.

Reversed and rendered.